**OFFICE OF CHILD SUPPORT and Elisabeth Schwebler v. Randall SHOLAN**

[782 A.2d 1199]

No. 00-434

September 11, 2001. In this international child support case, appellant and father Randall Sholan challenges the Caledonia Family Court's jurisdiction to enforce a child support order entered against him in the Federal Republic of Germany. We hold that the family court has jurisdiction to enforce the order, and affirm.

On November 8, 1995, in the Federal Republic of Germany, father signed a document acknowledging his paternity of Bianka Schwebler, daughter of Elisabeth Schwebler, and also acknowledging his obligation to support Bianka. The Schweblers are residents of Germany. On April 4, 1999, mother filed a complaint against father in Caledonia Family Court, seeking registration and enforcement of the foreign document as a child support order. The Vermont Office of Child Support joined in the action.

Father responded with a motion to dismiss, claiming the family court lacked subject matter jurisdiction over the issue. The motion was denied, and after the June 15, 2000 enforcement hearing the magistrate entered an order enforcing the foreign child support order.* Father appealed this order to the family court, which sustained the magistrate's decision. This appeal followed.

Father claims that the Federal Republic of Germany has not been declared by the United States Secretary of State to be a "foreign reciprocating country" pursuant to 42 U.S.C. § 659a(a)(1), and Vermont has not entered into a reciprocal arrangement with it for the establishment and enforcement of support obligations, pursuant to 42 U.S.C. § 659a(d). He further claims that these are the only remedies available for the enforcement of foreign child support orders, based on the constitutional principles of the exclusive power of the federal government to enter into relationships with foreign nations, the prohibition on states entering into treaties or alliances with foreign nations, and the exclusive right of the federal government to regulate commerce with foreign nations. Therefore, he argues, Vermont courts lack subject matter jurisdiction to enforce the foreign child support order. We note that, as the issue presented is a question of law, we review the family court's decision de novo. *State v. Longe,* 170 Vt. 35, 36, 743 A.2d 569, 570 (1999).

Passed by Congress in 1996, 42 U.S.C. § 659a provides that the United States Secretary of State is authorized to declare any foreign country a "foreign reciprocating country" if "the foreign country has established, or undertakes to establish, procedures for the establishment and enforcement of duties of support owed to obligees who are residents of the United States." 42 U.S.C. § 659a(a)(1). Subsection (d) provides that "[s]tates may enter into reciprocal arrangements for the establishment and enforcement of support obligations with foreign countries that are not the subject of a declaration pursuant to subsection (a) of this section, to the extent consistent with Federal law." *Id.* § 659a(d). The statute was passed in recognition of the difficulties present in pursuing support orders across national boundaries, with the purpose of "allow[ing] and encourag[ing] the Secretary of State to pursue reciprocal support agreements with other nations." 1996 U.S.C.C.A.N. 2495.

It is uncontested by the parties that no formal declaration by the Secretary of State has been made under the authority of 42 U.S.C. § 659a recognizing the Federal Republic of Germany as a foreign reciprocating country. Nor is it contested that Vermont has not entered into a reciprocal arrangement, pursuant to 42 U.S.C. § 659a, with that country. This does not, however, preclude Vermont from giving effect to foreign child support orders under the doctrine of comity. See *State ex rel. Desselberg v. Peele,* 523 S.E.2d 125, 128-29 (N.C. Ct. App. 1999) (recognizing state courts may recognize and enforce orders from foreign countries under principle of "comity of nations"); see also Restatement (Third) of Foreign Relations Law of the United States § 486(1) (1987) ("A court in the United States will recognize and enforce an order of a foreign court for support, valid and effective under the law of the state where it issued . . . .").

"State laws which 'interfere with, or are contrary to the laws of Congress' are invalidated by the Supremacy Clause of the United States Constitution." *Trustees of the Diocese of Vermont v. State,* 145 Vt. 510, 514, 496 A.2d 151, 153 (1985) (citing *Gibbons v. Ogden,* 22 U.S. (9

---

* The family court found that the foreign document fit within the "broad definition of a 'support order'" and that it was "clearly enforceable as a court order under the provisions of German law."

Wheat.) 1, 211 (1824); U.S. Const. art. VI). "When Congress chooses to legislate, pursuant to its constitutional powers, courts must find that local laws have been preempted by federal regulation if they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941) (internal quotations omitted)). However, because domestic relations are "preeminently matters of state law," the United States Supreme Court has "consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area." *Mansell v. Mansell*, 490 U.S. 581, 587 (1989). Federal preemption of state family law mechanisms occurs where "Congress has positively required by direct enactment that state law be preempted." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) (internal quotation omitted). For preemption to exist, "[a] mere conflict in words is not sufficient. State family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden." *Id.* (internal quotations omitted).

In the present case, there is neither an express preemption clause nor a conflict of words preventing Vermont from applying principles of comity to recognize and give effect to the foreign child support order at issue. The language of § 659a does not reflect in any way an intent by Congress to preempt state-level efforts at enforcement of foreign support orders. Cf. *Shute v. Shute*, 158 Vt. 242, 246, 607 A.2d 890, 893 (1992) (recognizing language of Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, indicated Congress's intent to preempt field of custody jurisdiction). Section 659a does not provide the sole mechanism by which foreign support orders may be enforced in state courts. The purpose of the statute, as reflected in its express language and the legislative history behind its passage, is to provide the United States Secretary of State with the power to enter into reciprocal agreements with foreign nations so as to promote the recognition and enforcement of foreign support orders, and not to prevent states from giving effect to foreign support orders. See 42 U.S.C. § 659a; 1996 U.S.C.C.A.N. 2495. Nor does the statute require states to enter into reciprocal enforcement arrangements with the foreign nations from which the orders originated before seeking to enforce those orders. We also note that father has not argued that any clear and substantial federal interests will suffer major damage by the family court's recognition and enforcement of this child support order.

As § 659a does not preempt state law jurisdiction over this foreign support order, we next examine whether the family court properly applied the principles of comity in recognizing and enforcing the foreign support order. As a general matter, under principles of comity, final judgments of courts of foreign nations which concern recovery of sums of money, the status of a person, or determine interests in property, are conclusive between the parties to the action and are entitled to recognition in United States courts. Restatement (Third) of Foreign Relations Law of the United States § 481 (1987). The Restatement further refines the principle of comity, providing that "[a] foreign judgment is generally entitled to recognition by courts in the United States to the same extent as a judgment of a court of one State in the courts of another State." *Id.* cmt. c. Reciprocity between the foreign state which issued the order and the domestic state which seeks to recognize and enforce it is unnecessary for the order to be recognized or enforced in the domestic state. *Id.*; see also *id.* reporter's note 1 (discussing judicial movement in majority of jurisdictions

away from requiring reciprocity). For a court to recognize and give effect to a foreign order, the judgment must have been rendered under a judicial system which provides impartial tribunals and procedures compatible with due process of law, and the issuing court must have had jurisdiction over the defendant sufficient to support rendering such a decision in the state in which the order is sought to be enforced. *Id.* § 482(1). If these prerequisites have been met, the state court may still decline to recognize the foreign order, if the issuing court lacked subject matter jurisdiction over the action; the defendant was not accorded adequate notice of the proceeding; the judgment was obtained by fraud; the original action or judgment is in conflict with state or federal public policy; the judgment conflicts with another judgment entitled to recognition; or the foreign proceeding was contrary to an agreement by the parties to submit the controversy to another forum for resolution. *Id.* § 482(2).

In assessing whether the foreign order met these requirements, the family court had before it evidence that the Federal Republic of Germany has enacted laws and procedures similar to Vermont laws concerning child support, and are compatible with due process; that defendant was under the jurisdiction of the body which issued the order, and that body also had jurisdiction over the action; that the cause of action was consistent with Vermont public policy, "ensuring that parents make their best efforts to provide monetary support for their minor children"; and that there was no indication or contention by either party that the judgment against defendant was obtained by fraud or was in conflict with another judgment. Based on the evidence presented concerning these factors, the court properly found that the fairness requirements of the Restatement § 482 had been met, and correctly concluded that it

was required to recognize and enforce the support order at issue.

*Affirmed.*