2004 VT 98

# Kathleen M. Heffernan v. Joseph W. Harbeson

[861 A.2d 1149]

No. 04-008

Present: Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed October 1, 2004

*Patricia G. Benelli* of *Dakin & Benelli, P.C.*, Chester, for Plaintiff-Appellee.

*Jean Anne Kiewel* of *Weber, Perra, Munzing, Krochmalny & Kiewel, P.C.*, Brattleboro, for Defendant-Appellant.

¶ 1. **Johnson, J.** Father appeals the family court's ruling that 15 V.S.A. § 665(a) controls the assignment of parental rights and responsibilities in actions brought under the Parentage Proceedings Act (PPA), 15 V.S.A. §§ 301-308. Father also appeals the parent-child contact schedule fashioned by the family court on remand from this Court's panel decision. Father claims that the schedule fails to equalize the time that his son spends with each parent. We affirm.

¶ 2. Mother gave birth to the parties' child in October 1999. Mother and father did not marry. Both mother and father have been deeply involved in the child's upbringing, each dedicating countless hours to raising the child. The parties separated in August 2000, and some months later, mother filed this parentage action. The family court held hearings and issued a written decision containing extensive findings of fact and conclusions of law. The court's decision awarded primary physical rights and responsibilities to mother, noting her plan to open a daycare facility that would allow her to care for the parties' child during the workday while still earning an income. The court's order also established a parent-child contact schedule that allowed father to spend weekdays with the child between the hours of 3:30 p.m. and 7:00 p.m. in addition to three weekends each month, three weeks in the summer, and alternating holidays. The court awarded the parties joint legal rights and responsibilities, i.e., the ability to participate in important aspects of the child's upbringing such as "education, medical and dental care, religion and travel arrangements." 15 V.S.A. § 664(1)(A). In settling upon these arrangements, the court considered "the best interests of the child" factors set forth in 15 V.S.A. § 665.

¶ 3. Mother and father both appealed various aspects of the family court's initial order. In considering that appeal, a three member panel of this Court noted that "[i]t is not clear . . . whether § 665 applies to actions under the Parentage Proceedings Act, 15 V.S.A. §§ 301-308." *Heffernan v. Harbeson*, Docket No. 2002-297 (Vt. May 6, 2003), at 2 (unpublished mem.). We noted that the PPA merely provided that " '[i]n an action under this subchapter, the court may determine parentage and may include in its order provision[s] relating to the obligations of parentage, including future child support, visitation and custody,' " but provided no standards to guide the courts in making determinations concerning "obligations of parentage." *Id.* (quoting 15 V.S.A. § 306). By contrast, 15 V.S.A. § 665(a), which applies to the

assignment of parental rights and responsibilities in marital dissolution cases, provides that "[w]hen the parents cannot agree to divide or share parental rights and responsibilities, the court shall award parental rights and responsibilities primarily or solely to one parent." Because the parents in this case could not agree on the proper division or sharing of parental rights and responsibilities, we remanded to the family court to determine whether § 665(a)'s prohibition of shared rights and responsibilities applied here, in the absence of parental agreement. *Id.*

¶ 4. On remand, and after briefing from both parties, the family court concluded that § 306 and § 665(a) must be read in pari materia because the statutes concerned the same subject matter: child custody. See *In re Cottrell*, 158 Vt. 500, 504, 614 A.2d 381, 383 (1992) (stating that the Court determines legislative intent by reference to the entire statutory scheme, and in so doing the Court reads statutes in pari materia). As a result, the family court amended its order, assigning sole legal custody to mother in compliance with the court's understanding of § 665(a). In awarding sole physical and legal custody to mother, pursuant to 15 V.S.A. § 665(d) the court required mother to notify father whenever there is a major change in the child's welfare.

¶ 5. Father appeals the family court order claiming error in the conclusion that § 665(a) applies in parentage actions. Father argues that this conclusion is inconsistent with the plain meaning of the statutes as written. In his view, the court's authority to "order provisions relating to the obligations of parentage, including future child support, visitation and custody," 15 V.S.A. § 306, is undefined and unrestricted because the PPA contains no standards to guide the courts in parentage cases. Further, father argues that § 665(a)'s application is limited, by its language, to custody disputes arising from annulment and divorce. Accordingly, he argues that the court's original order assigning joint legal custody to mother and father should not have been disturbed on remand.

¶ 6. We cannot agree that the Legislature intended to create a detailed, mandatory set of guidelines for our courts to apply only when resolving custody disputes in divorce and other dissolution proceedings, while giving the courts unfettered discretion to resolve the same issues between unwed parents. Accordingly, we affirm.

¶ 7. Whether the family court properly construed the controlling statutes is a question of law that we review de novo. *Office of Child Support v. Sholan*, 172 Vt. 619, 620, 782 A.2d 1199, 1202 (2001) (mem.).

"When construing a statute, the function of the court is to ascertain and give effect to the intention of the legislature." *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). When the statute's scope and meaning are readily apparent, no construction is necessary, and we apply the statute according to its terms. *Id.* In cases where there is doubt or ambiguity, however, we discern legislative intent by considering the statute as a whole, reading integral parts of the statutory scheme together. *Id.*; see also *In re S.B.L.*, 150 Vt. 294, 301, 553 A.2d 1078, 1083 (1988) (stating that Court construes statutes relating to same subject matter in pari materia). "Thus, we must look not only at the letter of a statute but also at its reason and spirit" to avoid results that are irrational or unreasonable. *S.B.L.*, 150 Vt. at 301, 553 A.2d at 1083.

¶ 8. The PPA's stated purpose is to ensure that "the legal rights, privileges, duties and obligations of parents be established for the benefit of all children, regardless of whether the child is born during marriage or out of wedlock." 15 V.S.A. § 301. By its terms, this policy statement indicates a legislative desire that the courts adjudicate parental obligations in a consistent fashion so that children are not treated differently under the law solely because of the relationship between their parents at the time of their birth. The PPA contains no standard for establishing parental rights and responsibilities for children born to unmarried parents, but a standard for these determinations is provided in the part of Title 15 that deals with children "born during marriage."

¶ 9. Section 665 contains the "best-interest-of-the-child standard." The best-interests standard "has been the primary consideration in determining issues of custody for over sixty years," *Paquette*, 146 Vt. at 90, 499 A.2d at 28, well before the Legislature enacted the PPA in 1984. When we interpret statutes, we presume that the Legislature was mindful of relevant precedents and prior legislation. *Thayer v. Herdt*, 155 Vt. 448, 453, 586 A.2d 1122, 1125 (1990). Therefore, in light of its stated purpose in enacting the PPA, we cannot accept father's argument that the Legislature would have wanted courts to use some alternative standard in determining custody disputes for children born to unmarried parents while the best-interests standard has long been used to assign custody in divorce cases. As mother points out, such a holding would frustrate the statutory purpose by creating a situation where children whose circumstances are alike in all material respects, other than the legal relationship of their parents, would be subjected to

widely varying custody arrangements. This irrational result can be avoided by reading § 665 in pari materia with the PPA.

¶ 10. In *Cabot v. Cabot*, we recognized that, under § 665, courts lack the power to force divorcing parents to share legal rights and responsibilities when they cannot reach a voluntary agreement on sharing and dividing parenting obligations. 166 Vt. 485, 493-94, 697 A.2d 644, 649-50 (1997). We reasoned that such an arrangement was not in the best interests of the child because it would "creat[e] a situation in which each decision will be a source of further conflict and trauma for the child." *Id.* at 494 n.5, 697 A.2d at 650 n.5. Father's brief attempts to distinguish the relationships of unwed parents from those of married parents. Despite his analysis, he has not identified any different general characteristics of unwed couples that might have led the Legislature to conclude that the danger of decision-by-decision parental conflict that § 665(a) seeks to prevent would not be present in custody disputes involving unwed parents. Both § 665 and § 306 involve the same general subject matter where the same policy concerns apply. Accordingly, we see no reason why the two statutes should not be read, consistent with our rules of construction, in pari materia. See *Beaudry v. Beaudry*, 132 Vt. 53, 56, 312 A.2d 922, 924 (1973) (concluding that "sufficiently cognate" statutes are "*in pari materia* and are to be construed with reference to each other as parts of one system").

¶ 11. We are also not persuaded by father's interpretation of § 665 as being limited to custody disputes arising out of divorce and annulment. He cites the first sentence of § 665(a), which states: "In an action under this chapter the court shall make an order concerning parental rights and responsibilities of any minor child of the parties." The remainder of the section goes on to establish the standards for making such orders. Nothing in the cited passage implies that the standards that follow are exclusive to orders issued under Title 15, chapter 11. Thus, we reject father's argument on this point.

¶ 12. The parties before us were unable to agree to share or divide legal rights and responsibilities for their child. Under these circumstances, § 665(a), while not requiring an "all or nothing" approach, does prohibit a court-ordered sharing arrangement. *Cabot*, 166 Vt. at 494-95, 697 A.2d at 651. In light of our conclusion that § 665(a) applies to parentage actions, and in the absence of any argument on appeal that the award of sole legal custody to mother was not

in the best interests of the child, we affirm the family court's amended order with respect to assignment of parental rights and responsibilities.

¶ 13. Father also appeals the parent-child contact schedule established by the family court's amended order after remand. The court's original order allotted father parent-child contact from 3:30 p.m. to 7:00 p.m. every weekday of every week. We reversed the previous order because it led to a patent "lack of balance" in the contact each parent had during the "rich unstructured hours after school." *Heffernan*, Docket No. 2002-297 (Vt. May 6, 2003), at 2. The amended order provides that, once the child begins school, mother shall have contact with the child in even numbered weeks of the month from 3:30 p.m. to 7:00 p.m. on Monday through Wednesday, and father will have contact during the same hours on Thursday and Friday. The contact schedule flips for the odd numbered weeks, with father getting contact Monday through Wednesday, and mother Thursday and Friday. There was also a question about vacation time that the parties resolved through a stipulation that the court adopted in its amended order. Father acknowledges that the family court essentially equalized after work and school time. Nonetheless, he claims that it erred in not achieving an even greater degree of equalization by extending father's contact through dinner and after dinner time, including more overnight contact beyond that which he would have during his weekend and vacation visitations.

¶ 14. The family court has broad discretion in custody matters. *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998). We will not reverse a family court's order absent a showing that the court abused its discretion or exercised it in a manner that was clearly unreasonable in light of the evidence. *Myott v. Myott*, 149 Vt. 573, 578, 547 A.2d 1336, 1339 (1988).

¶ 15. We remanded the case to eliminate a patent imbalance created by the court's first order. In doing so, we did not require absolute equalization in the time that the child spends with each parent; that would be shared physical custody. We think the court succeeded in achieving a reasonable balance in its amended order with respect to contact, recognizing that only so much contact is feasible when one parent retains sole physical custody. Accordingly, we see no abuse of discretion in the court's amended parent-child contact schedule.

*Affirmed.*