2007 VT 123

# State of Vermont v. August D. Neumann

[944 A.2d 228]

No. 06-366

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 21, 2007

*Dan M. Davis*, Windham County State's Attorney, and *Nathaniel K. Seeley*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*William E. Kraham* of *Weber, Perra & Munzing, P.C.*, Brattleboro, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals the judgment of conviction for driving while under the influence of intoxicating liquor (DUI) in violation of 23 V.S.A. § 1201(a)(2). Defendant voluntarily testified at his civil suspension hearing under the protection of the civil suspension immunity statute, 23 V.S.A. § 1205(o). Defendant subsequently filed a motion for a hearing to determine whether the evidence the State planned to use to prosecute defendant for DUI was impermissibly derived from his immunized testimony. Defendant also filed a motion to bar the prosecutor and the State's primary trial witness from participating in the criminal DUI trial because of their exposure to the immunized testimony. The trial court denied both motions. Defendant now seeks reversal of the conviction, arguing that the trial court erred by not holding the hearing and by allowing the prosecutor and the State's primary trial witness to participate in the trial. We affirm.

¶ 2. The following facts are uncontested. On July 31, 2004, defendant was arrested for driving while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2). After transporting defendant to the Wilmington Police Department, the arresting officer asked defendant to provide a breath sample as evidence, and defendant stated that he would. The officer instructed defendant as to the sampling procedure. According to the officer, defendant would not blow directly into the tube, but rather blew past the tube and claimed that he could not blow hard

enough because he had emphysema. The officer believed defendant was blowing hard enough to obtain a sample, but was intentionally not blowing into the tube as instructed. After four attempts to obtain a sample, the officer informed defendant that he considered defendant's failed attempts to constitute a refusal to give a sample. The arresting officer issued a notice to suspend defendant's driver's license for refusal to submit to a breath test under 23 V.S.A. § 1205(a). Defendant filed a notice of his intention to contest whether he had refused to permit the test pursuant to 23 V.S.A. § 1205(h)(3), and a motion to suppress his alleged refusal of the evidentiary breath test in the criminal DUI case.

¶ 3. Defendant voluntarily testified at his civil suspension hearing under the protection of the civil suspension immunity statute, 23 V.S.A. § 1205(o). Defendant suffers from chronic obstructive pulmonary disease (COPD). At the civil suspension hearing, the court found that this condition, rather than a refusal, was the cause of defendant's failure to provide a sufficient breath sample, and the court entered judgment for defendant. At the hearing, the court also granted defendant's motion to suppress the alleged refusal in defendant's criminal DUI case.

¶ 4. Defendant then sought an order from the trial court effectuating his § 1205(o) immunity. He argued that § 1205(o) required the trial court to implement the procedures in *State v. Ely*, 167 Vt. 323, 708 A.2d 1332 (1997), that we established as necessary to ensure that compelled testimony was properly immunized so as to avoid violation of constitutional guarantees against self-incrimination. Specifically, defendant argued that the trial court was required to hold a so-called *Kastigar* hearing at which the State would bear the burden of proving that the evidence it planned to use at defendant's DUI trial was not obtained or derived from defendant's civil suspension hearing testimony.[1] Defendant appended a copy of *State v. Malico*, No.

---

[1] In *Kastigar v. United States*, the United States Supreme Court held that when a witness is compelled to testify in a criminal or civil proceeding under grant of immunity, to overcome Fifth Amendment concerns, the prosecution has the burden of proving that evidence used against the witness in a subsequent criminal proceeding "is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. 441, 460 (1972). "The purpose of a *Kastigar* hearing is to determine if the government's evidence was obtained in violation of the defendant's Fifth Amendment rights." *United States v. McKee*, 192 F.3d 535, 539 n.2 (6th Cir. 1999); see also *United States v. North*, 920 F.2d 940, 941-42 (D.C. Cir.

1407-9-02 BnCr (Vt. Dist. Ct. October 9, 2003), to his memorandum in support of his argument.

¶ 5. Defendant also argued that the prohibition on the use of immunized testimony extended beyond prosecutors and law enforcement officers to fact witnesses and highlighted our recommendation, made in *Ely*, "that persons who investigate or prosecute immunized witnesses be separate from those who had access to the immunized testimony." 167 Vt. at 337, 708 A.2d at 1340. Defendant filed a motion in limine requesting that the court bar the prosecutor who presented the State's case at the civil suspension hearing from representing the State at trial and seeking to exclude any testimony by the arresting officer who, as a witness at the civil suspension hearing, had been exposed to defendant's immunized testimony. The State claimed that all the evidence the State planned to present was "encapsulated from the beginning" in the officer's report and the video tape, which were both made the night of the arrest and prior to defendant's immunized testimony.

¶ 6. At the commencement of the jury trial, the trial court denied defendant's motions. The jury returned a verdict of guilty on the DUI charge. Defendant then moved to preclude entry of the judgment of conviction, to dismiss the information, and to discharge defendant on the ground that the court had erroneously denied defendant's pretrial motions in violation of 23 V.S.A. § 1205(o). The district court denied this motion, reasoning that it had ruled on the issues prior to trial, and had properly followed the procedures outlined in *Malico*, No. 1407-9-02 BnCr, slip op. at 3-4, in order to safeguard defendant's § 1205(o) immunity. Defendant appeals.

¶ 7. Whether the denial of defendant's motions for a *Kastigar* hearing, for the removal of the prosecutor, and for the exclusion of witness testimony violated 23 V.S.A. § 1205(o) is a question of law subject to de novo review. *State v. Damon*, 2005 VT 54, ¶ 6, 178 Vt. 564, 878 A.2d 256 (mem.); see also *Heffernan v. Harbeson*,

---

1990) (trial court erred in failing to hold full *Kastigar* hearing to ensure that independent counsel made no use of defendant's immunized congressional testimony); *United States v. Overmyer*, 899 F.2d 457, 460-64 (6th Cir. 1990) (holding that the government met its requisite burden under *Kastigar* in a hearing conducted to determine whether the government's presentation to the grand jury had been tainted by any use, direct or indirect, of Overmyer's immunized testimony).·

2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149 (whether the court properly interprets a statute is a question of law and reviewed de novo).

¶ 8. The civil suspension statute at issue here provides use immunity for a defendant's *voluntary* testimony at a civil suspension hearing:

> (o) Use immunity. No testimony or other information presented by the defendant in connection with a proceeding under this section or any information directly or indirectly derived from such testimony or other information, may be used for any purpose, including impeachment and cross-examination, against the defendant in any criminal case, except a prosecution for perjury or giving a false statement.

23 V.S.A. § 1205(o). The civil suspension immunity statute resembles another statute, which provides use immunity for *compelled* testimony:

> no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used for any purpose, including impeachment and cross-examination, against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.

12 V.S.A. § 1664(a).

¶ 9. The Legislature enacted 12 V.S.A. § 1664 so that the government could compel witness testimony without running afoul of the witnesses' constitutional privilege against compelled self-incrimination.[2] In *Ely*, we were faced with the task of deciding whether and how the immunity provided by § 1664 was consistent with that privilege. We decided that § 1664 immunity could be consistent with the privilege against compelled self-incrimination as long as certain procedural safeguards were put in place. *Ely*,

---

[2] The Vermont Constitution, Chapter I, Article 10, defines the rights of persons accused of crimes. It reads "nor can a person be compelled to give evidence against oneself." This same protection against compelled self-incrimination is addressed under the Fifth Amendment to the United States Constitution: "nor shall [any person] be compelled in any Criminal Case to be a witness against himself."

167 Vt. at 335, 708 A.2d at 1339. We held that, normally, a *Kastigar* hearing must be held in which the State bears the burden of proving that the evidence it plans to use against a witness was not obtained or derived from his immunized, compelled testimony. *Id.* As noted, in *Ely*, we reasoned that the prohibition on the use of immunized compelled testimony extended to fact witnesses and recommended "that persons who investigate or prosecute immunized witnesses be separate from those who had access to the immunized testimony." *Id.* at 337, 708 A.2d at 1340.

■ ¶ 10. Defendant argues that because 23 V.S.A. § 1205(o) and 12 V.S.A. § 1664 contain some identical language, and because we required the protection afforded by 12 V.S.A. § 1664 to coextend with the constitutional privilege against self-incrimination in *Ely*, that 23 V.S.A. § 1205(o) immunity should also be protected by the procedures we outlined in *Ely*. In other words, defendant invites us to rule that the protection afforded by § 1205(o) is coextensive with the constitutional privilege against compelled self-incrimination, even though § 1205(o) provides immunity to persons testifying voluntarily. We decline defendant's invitation.

¶ 11. We have been faced with a similar question before. In *State v. Begins*, we explained that a probationer faced with the choice of voluntary self-incrimination at a probation revocation hearing held prior to a criminal proceeding resulting from the same conduct faced a choice " 'unnecessarily inconsistent with constitutional values,' " although that choice did not directly infringe on his constitutional rights. 147 Vt. 295, 298, 514 A.2d 719, 722 (1986) (quoting *People v. Coleman*, 533 P.2d 1024, 1030 (Cal. 1975)). Although there is no specific statute requiring the grant of use immunity for a probationer testifying at his own probation revocation hearing, we nevertheless expressly adopted the rule laid out by the California Supreme Court:

> "We accordingly declare as a judicial rule of evidence that . . . the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges, save for purposes of impeachment or

rebuttal where the probationer's revocation hearing testimony or evidence derived therefrom and his testimony on direct examination at the criminal proceeding are so clearly inconsistent as to warrant the trial court's admission of the revocation hearing testimony or its fruits in order to reveal to the trier of fact the probability that the probationer has committed perjury at either the trial or the revocation hearing."

*Id.* at 299, 514 A.2d at 722-23 (quoting *Coleman*, 533 P.2d at 1042). In *Begins*, we further noted our duty to " 'alleviate the hard testimonial choice facing probationers subject to the loss of probation for conduct for which they may also be liable to criminal prosecution.' " *Id.* at 298, 514 A.2d at 722 (quoting *Coleman*, 533 P.2d at 1030). We explained:

[t]he State's ability to use at trial a probationer's prior revocation hearing testimony creates an inevitable tension between the right to due process at the revocation hearing and the right to remain silent at trial. When a revocation hearing occurs before the criminal trial, the State is able to gain evidence for the criminal trial the easy way.

*Id.* (internal quotations and citation omitted). We articulated a rule "patterned after" but not exactly "the use and fruits immunity rule adopted by . . . [*Kastigar*]." *Id.* at 299, 514 A.2d at 722. We held:

If the State wishes to introduce evidence which the probationer objects to as being the fruits of his revocation hearing testimony to prove its case, the State must affirmatively show that the evidence was derived from a source independent of the probationer's testimony at the revocation hearing. The prosecution should anticipate defense objections, and address them in pretrial proceedings in order to avoid prejudicial exposure of the testimony at trial.

*Id.* at 300, 514 A.2d at 723 (citations omitted).

¶ 12. Our reasoning in *Begins* applies equally to this case. Defendant was able to successfully defend against the suspension of his driver's license by testifying at the hearing regarding his history of smoking, his emphysema condition, the limitations on

his physical activity, and his experience of trying to provide a breath sample to the arresting police officer. By voluntarily testifying at the hearing, however, he also subjected himself to cross-examination by the prosecuting attorney, who specifically asked defendant if he had been drinking. Defendant admitted to drinking some alcohol, thereby exposing the prosecutor and the police officer, who were present for defendant's testimony, to immunized, incriminating testimony.

¶ 13. Defendant argues that the only way to prevent use of his immunized testimony was to hold a *Kastigar* hearing and to bar the prosecutor and arresting officer from participating in the criminal trial. We disagree. As in the case of a probationer facing violation of probation, defendant was not "compelled" to testify at his civil suspension hearing, though he did face a hard testimonial choice. Here, the trial court properly provided a means at trial to prevent the use of defendant's immunized testimony. The court referred to the case which defendant had appended to his motion for a *Kastigar* hearing — *Malico*, 1407-9-02 BnCr, slip op. at 3-4 — and indicated that the procedure therein would be followed, a procedure derived from *Begins*. Specifically, the court explained that when defendant objected to evidence offered and made a showing that it was derived from defendant's testimony at the civil suspension hearing, then the State would have the burden to show an independent source for the evidence. The court cautioned defense counsel that "as the items of evidence are coming in . . . the objections have to be specific."

■ ■ ¶ 14. We now adopt this procedure. We hold that when, at a criminal trial, a defendant objects to the admission of testimony a defendant has given at his or her civil suspension merits hearing, the defendant must meet the initial burden of producing evidence that the testimony was in fact provided by the defendant at the civil suspension hearing. Once this is established, if the evidence is to be admitted, the prosecution must prove by a preponderance of the evidence that the testimony was not provided by the defendant at his or her civil suspension hearing. When a defendant objects to the admission of evidence which the defendant contends is the *fruit* of his or her civil suspension testimony, the defendant must meet the burden of producing evidence of a relationship between the defendant's civil suspension hearing testimony and the alleged derivative evidence to which the defendant has objected. Once this prima facie showing has been

made, the objection must be sustained unless the prosecution proves by a preponderance of the evidence the lack of any impermissible relationship between the testimony at the suspension hearing and the evidence offered in the criminal proceeding, and that the evidence offered in the criminal proceeding has a source independent of the suspension hearing testimony. To facilitate this procedure, the defendant should timely file a motion in limine to identify for the court any such issue about which the defendant is aware sufficiently in advance of trial so as to avoid unnecessary delay in the criminal proceeding.

¶ 15. In this case, no evidence was objected to at trial on the basis that it violated the use immunity granted under § 1205(o), and no actual evidence is identified on appeal as objectionable on this basis. Because defendant has failed to make any claim regarding specific use, either direct or derived, of immunized testimony at the trial, this Court sees no reason to reverse his conviction.

¶ 16. The trial court's denial of defendant's motions for a *Kastigar* hearing and for the barring of the prosecutor and primary witness from participating in the criminal trial was made with a clear affirmation of the use immunity afforded to defendant under § 1205(o). The record indicates that the trial court took appropriate steps to ensure that defendant enjoyed the full extent of this immunity, and there is no claim that the immunity was violated in any specific manner. Although the State's case would have been safer had it isolated the immunized testimony from the prosecutor and witness, defendant has not alleged any *actual* use of immunized testimony, which is all § 1205(o) prohibits. The conviction is affirmed.

*Affirmed.*