NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 17

No. 2020-169

| | |
|---|---|
| Meghan Forrett | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Orion Stone | November Term, 2020 |


John R. Treadwell, J.

Maguire Curran, Vermont Legal Aid, Inc., Montpelier, for Plaintiff-Appellee.

Kevin Rogers of Costello, Valente & Gentry, P.C., Brattleboro, for Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1. **PER CURIAM.** Defendant Orion Stone appeals from the trial court's order extending a relief-from-abuse (RFA) order against him. He argues that the plain language of 15 V.S.A. § 1103(e) required plaintiff Meghan Forrett to seek her extension before the initial order expired and because she failed to do so, the court lacked jurisdiction over her request. Defendant maintains that plaintiff's belated request cannot be considered "excusable neglect" under Vermont Rule of Civil Procedure 6(b). Defendant further argues that the court was required and failed to make findings that he abused plaintiff and that there was a danger of further abuse. We construe § 1103(e) to allow plaintiff's filing here; however, we conclude that there was insufficient evidence to support the trial court's decision to extend the RFA order. Because we conclude that

the hearing did not provide plaintiff sufficient opportunity to present relevant evidence, we reverse and remand for the trial court to conduct further proceedings.

¶ 2. Plaintiff sought an RFA order against defendant in March 2019. She alleged that at the time, she and defendant were high school students and former romantic partners. Plaintiff had a new boyfriend, and she alleged that defendant was showing up unexpectedly in places that she frequented, making her feel scared and anxious. She alleged that she observed defendant one evening, driving in reverse in front of her new boyfriend's driveway. Plaintiff further alleged that defendant had sexually assaulted her and otherwise acted in ways that frightened her. She stated that defendant repeatedly threatened to kill himself if she broke up with him.

¶ 3. The court issued a temporary RFA order, finding that defendant abused plaintiff by placing her in fear of serious, imminent physical harm, stalking her, and sexually assaulting her, and that there was an immediate danger of further abuse. Following a hearing, the court issued a final RFA order effective through April 3, 2020. The parties stipulated to waive findings. Defendant was ordered, among other things, to refrain from committing further acts of abuse and to stay 300 feet away from plaintiff.

¶ 4. On Tuesday, April 7, 2020, plaintiff moved to extend the RFA order for another year. She asked the court to excuse her delayed filing, explaining that she had not been able to locate an address for defendant sooner. Plaintiff stated that defendant had violated the RFA and that she remained afraid of him.

¶ 5. Defendant moved to dismiss plaintiff's request, arguing that the RFA order had expired and that the court therefore lacked subject matter jurisdiction to extend it. He cited 15 V.S.A. § 1103(e), which provides that "[r]elief shall be granted for a fixed period, at the expiration of which time the court may extend any order, upon motion of the plaintiff, for such additional time as it deems necessary to protect the plaintiff . . . from abuse." Defendant argued that the

2

words "at the expiration of" required plaintiff to file her request for an extension before the most recent RFA order expired. He further argued that plaintiff's inability to serve him did not excuse her belated filing.

¶ 6. At a hearing on the motions, plaintiff testified that she had been told that she needed defendant's address to file for an extension and that she had been trying to find his address since February 2020.[1] Plaintiff cited to her affidavit, which described the numerous ways in which she tried to find him. Once she discovered defendant was back in Vermont, plaintiff filed her request.

¶ 7. With respect to the merits, plaintiff stated that she wanted the order extended because defendant had engaged in conduct that violated the temporary and final RFA orders despite knowing his behavior was prohibited. Plaintiff testified that, on the day she obtained the temporary RFA order, she was parked in a school lot facing the front of the school. Defendant raced through the parking lot and sped up to "jump" a speed bump right in front of her. Plaintiff testified that defendant's behavior made her fear for her safety given defendant's history of violence. Plaintiff stated that several months later she saw defendant walking toward a park where she was playing softball. Defendant saw plaintiff, glared at her, and continued to walk into the park where he got into his friend's truck. Plaintiff's teammates told defendant that he needed to leave, which he did. This incident also made plaintiff fear for her safety.

¶ 8. Plaintiff represented herself in the hearing on her motion to extend the order; her testimony consisted primarily of responding to questions from the bench. The court did not ask plaintiff about the circumstances leading to the initial RFA order or defendant's alleged history of violence that established the context for the two incidents plaintiff described.

---

[1] We note that if someone told plaintiff this, the information was not accurate. It is not necessary to have the defendant's address to file RFA petitions or motions seeking to extend an RFA order.

¶ 9.     Significantly, in response to a question from defendant, the court indicated that testimony related to plaintiff's allegations underlying the initial RFA order would not be relevant or persuasive in deciding whether to grant an extension. The court indicated that to the extent that defendant sought to present such evidence, the request would be denied.

¶ 10.     At the close of the hearing, the court denied defendant's motion to dismiss. It concluded that plaintiff demonstrated excusable neglect under V.R.C.P. 6(b)(1)(B) for her belated filing. The court cited plaintiff's diligence in seeking to obtain information that she believed necessary for her extension request and found that she acted quickly to seek an extension once she learned defendant was in Vermont. Turning to the merits, the court stated that, pursuant to 15 V.S.A. § 1103(e), it did not need to find abuse or a violation of the prior order before granting an extension request. See id. ("It is not necessary for the court to find that abuse has occurred during the pendency of the order to extend the terms of the order."). The court concluded that plaintiff satisfied her burden of proving that she needed an extension to protect her from further abuse. It cited plaintiff's testimony regarding the two incidents in which defendant violated the RFA order and noted that defendant had admitted engaging in the conduct she described. The court rejected defendant's assertion that these were simply technical violations and instead found them persuasive grounds for extending the RFA. This appeal followed. We consider in turn defendant's argument that plaintiff's motion was untimely, and the trial court's ruling on the merits.

I. Timeliness

¶ 11.     We begin with defendant's assertion that the plain language of 15 V.S.A. § 1103(e) required plaintiff to seek her extension before the initial RFA order expired. Defendant maintains that the statute sets a firm deadline and when the order expires, it no longer exists, and there is nothing to extend. Defendant contends that if the Legislature intended to allow courts to extend RFA orders after they expired, it would have said so explicitly. Citing Arbuckle v. Ciccotelli,

4

defendant asserts that any request to extend a final order after it has expired is outside the trial court's jurisdiction. 2004 VT 68, 177 Vt. 104, 857 A.2d 354. Assuming these arguments succeed, defendant asserts that the court erred in allowing plaintiff's filing based on excusable neglect.

¶ 12. The proper interpretation of § 1103(e) presents a question of law, which we review without deference. Heffernan v. Harbeson, 2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149. As set forth below, we construe § 1103(e) to allow plaintiff's filing here. Given our conclusion, we do not reach defendant's excusable-neglect argument.

¶ 13. As we have recognized, Vermont's Abuse Prevention Act "provid[es] a unique legal remedy, injunctive in nature, aimed at ending the cycle of domestic violence before it escalates." Raynes v. Rogers, 2008 VT 52, ¶ 8, 183 Vt. 513, 955 A.2d 1135. To this end, a party can obtain a relief-from-abuse order "if the court finds that the defendant has abused the plaintiff, and . . . there is a danger of further abuse." 15 V.S.A. § 1103(c)(1)(A). Section 1103(e) requires that relief be granted "for a fixed period," but enables the court, on a plaintiff's motion, to extend such orders "at the expiration" of the fixed period "for such additional time as it deems necessary to protect the plaintiff . . . from abuse." The statute does not directly address when a plaintiff must file an extension request.

¶ 14. In interpreting this statute, we seek "to ascertain and give effect to the intention of the legislature." Heffernan, 2004 VT 98, ¶ 7 (quotation omitted). "When the statute's scope and meaning are readily apparent, no construction is necessary, and we apply the statute according to its terms." Id. If "there is doubt or ambiguity, however, we discern legislative intent by considering the statute as a whole, reading integral parts of the statutory scheme together." Id. "Thus, we must look not only at the letter of a statute but also at its reason and spirit to avoid results that are irrational or unreasonable." Id. (quotation omitted).

¶ 15. We are also mindful that "[a]buse-prevention actions are remedial in nature, and . . . focus solely on the plaintiff's need for immediate and prospective protection from the defendant." Raynes, 2008 VT 52, ¶ 13. As a remedial statute, "the Abuse Prevention Act . . . must be liberally construed to suppress the evil and advance the remedy intended by the Legislature." Id. ¶ 15 (quotation omitted).

¶ 16. With these principles in mind, we consider what the Legislature intended by allowing the trial court to grant relief from abuse "for a fixed period, at the expiration of which time the court may extend any order, upon motion of the plaintiff, for such additional time as it deems necessary to protect the plaintiff . . . from abuse." 15 V.S.A. § 1103(e). Defendant maintains that the words "at the expiration of which time" plainly mean that a plaintiff must request an extension "before" the order's expiration or at least "by" the expiration date, while plaintiff argues that these words plainly allow for a filing "after" the order's expiration.

¶ 17. We conclude that the statute is ambiguous for two reasons. First and foremost, the statute is silent as to the deadline, if any, by which a plaintiff must file a motion seeking to extend an RFA order, and instead speaks only to the action that a court may take at the expiration of the order. Any conclusion as to the deadline by which the plaintiff must file the motion necessarily rests on inference, at best.

¶ 18. Second, the words "at the expiration of" are capable of more than one reasonable meaning. See State v. Brunner, 2014 VT 62, ¶ 18, 196 Vt. 571, 99 A.3d 1019 ("Ambiguity exists where a statute is capable of more than one reasonable interpretation, each vying to define a term to the exclusion of other potential interpretations."). As one New York state court explained, " '[a]t' is not a word of precise and accurate meaning, or of clean clear-cut definition. It has a great relativity of meaning, shaping itself easily to varying context." E. Side Sav. Bank of Rochester v. City of Buffalo, 104 N.Y.S.2d 110, 115 (Sup. Ct. 1936) (construing "at the expiration

6

of" to mean "after" expiration rather than "on the day of" expiration and citing other cases so holding). Because these words are ambiguous, we must determine the Legislature's intent "from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law." Lydy v. Trustaff/Wausau Ins. Co., 2013 VT 44, ¶ 6, 194 Vt. 165, 76 A.3d 150 (quotation omitted).

¶ 19. In keeping with the liberal construction afforded to remedial statutes and the purpose of the Act, we construe the words "at the expiration of" to allow courts to extend RFA orders "to protect the plaintiff . . . from abuse," 15 V.S.A. § 1103(e), whether the request is made before, after, or upon the exact day, that the existing order expires. This affords plaintiffs the most expansive relief and promotes the legislative goal of "ending the cycle of domestic violence before it escalates." Raynes, 2008 VT 52, ¶ 8.

¶ 20. We recognize the notion of continuity inherent in the concept of an "extension," but if the Legislature had intended to require a plaintiff to seek an extension before the order's expiration date, it could have said so expressly. It did not. As noted above, it set no express deadline for a plaintiff to act, and its use of the word "at" does not plainly mean "before." See At, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/at [https://perma.cc/J32X-YGZ7] (defining "at" as "to indicate presence or occurrence in, on, or near"); see also Toensing v. Attorney Gen. of Vt., 2019 VT 30, ¶ 7, 210 Vt. 74, 212 A.3d 180 (observing that "[t]he Legislature is presumed to have intended the plain, ordinary meaning of the adopted statutory language" and such meaning "may be obtained by consulting dictionary definitions" (quotations omitted)).

¶ 21. We are also mindful of the collateral effects of an RFA order on defendants, but must construe the statute in a way that "suppress[es] the evil and advance[s] the remedy intended by the Legislature." Raynes, 2008 VT 52, ¶ 15. An interpretation of an ambiguous phrase that

7

promotes a plaintiff's ability to obtain "immediate and prospective protection" from abuse must prevail. Id. ¶ 13. Our construction does not impede a defendant's ability to know when an RFA order will terminate, as defendant suggests; the statute allows for extensions and a defendant will be notified when an extension request is filed.[2]

¶ 22. Our construction of § 1103(e) is consistent with our prior interpretation of this language in a nonbinding three-justice decision. See Olesky v. Olesky, No. 93-531, slip op. at 2 (Vt. June 24, 1994) (unpub. mem.). In Olesky, the plaintiff moved for an extension of an RFA order nine days after it expired. The court granted plaintiff temporary relief and, following a hearing, she obtained an extension. As here, the defendant argued that the plaintiff's motion to extend was void because it was filed after the expiration of the initial order and thus, there was nothing to extend.

¶ 23. We held that "[t]he statute does not require that the motion to extend be filed before the expiration of the initial order." Id. at 2. "In fact," we continued, the statute "allows a motion to extend 'at the expiration of' the time prescribed in the initial order." Id. We concluded that "[t]his terminology suggests that the Legislature intended no prohibition for filing an extension motion after the expiration of the original order." Id. We reach the same conclusion today.

¶ 24. As in Olesky, here we reject defendant's assertion that once the order expires, there is nothing to extend. The Legislature has provided otherwise in § 1103(e). We similarly reject

---

[2] We recognize that our interpretation of § 1103(e) contemplates the possibility of discontinuity between the initial period of a relief-from-abuse order and the "extended" period of that order under § 1103(e), because it allows a court to "extend" the order in response to a motion filed after there is no longer any order to extend. Although described as an "extension," the court's post-expiration order "extending" an RFA order does not retroactively revive the expired order from the time of its expiration. The effect of a court's order extending the RFA order is only prospective from the time of the court's extension order. To hold otherwise would raise serious due process issues. See, e.g., State v. Waters, 2013 VT 109, ¶ 19, 195 Vt. 233, 87 A.3d 512 (holding that defendant charged with violating abuse protection order must have had notice that conduct would constitute a violation).

defendant's assertion that our construction is inconsistent with the language stating that relief shall be granted for "a fixed period." 15 V.S.A. § 1103(e). The Legislature plainly made an exception to the "fixed period" requirement by enabling courts to extend such orders.

¶ 25. Our decision is also consistent with the Maine Supreme Judicial Court's interpretation of a similar statute. See O'Brien v. Weber, 2012 ME 98, 48 A.3d 230. In O'Brien, a mother obtained a two-year RFA order on behalf of her daughter against the child's father. Sixteen months after the order expired, the mother requested that the order be extended. She based her request on the same act—a threatening phone call in 2008—that led to the first order. The mother also filed a new request for relief on behalf of herself and her daughter based on the 2008 call, which the trial court granted.

¶ 26. The Maine Supreme Judicial Court vacated the new protection order on appeal. Id. ¶ 10. It explained that Maine law "place[d] a durational limit on protection orders, requiring that they be 'for a fixed period not to exceed 2 years.' " Id. ¶ 8 (quoting 19–A M.R.S. § 4007(2)). Like in Vermont, the law stated that " '[a]t the expiration of that time, the court may extend an order, upon motion of the plaintiff, for such additional time as it determines necessary to protect the plaintiff or minor child from abuse.' " Id. (emphasis omitted) (quoting 19-A M.R.S. § 4007(2)). The court emphasized that extensions were "the exclusive means to extend a protection order beyond the two-year durational limit." Id. ¶ 9.

¶ 27. Looking at the terms of its statute, the court reasoned that:

> Although the statute is silent as to how much time must transpire after a protection order has expired before the court may no longer grant an extension, it is implicit in the requirement that protection orders be for a "fixed period" that the extension occur either before expiration, or if after, as soon after the expiration date as is reasonably possible under the relevant circumstances.

Id. ¶ 8.

9

¶ 28.    The court held that the initial order had long expired, with no timely extension requested, and the statute did not authorize the issuance of "a new protection order to replace a previously expired [one]." Id. ¶ 9. Any other conclusion, the court explained, "would be contrary to the express and unambiguous provisions of the statute, would undermine the finality of judgments issued pursuant to the statute, and would discourage plaintiffs from filing timely motions to extend existing protection orders." Id.

¶ 29.    As in the cases above, we construe our law to allow requests for extensions to be filed before or after the expiration of an RFA order. We need not decide if requests filed after expiration must be filed "as soon after the expiration date as is reasonably possible under the relevant circumstances." Id. ¶ 8. Even assuming this standard applied, the timing of plaintiff's request—made on the second business day after the RFA order expired—was reasonable as a matter of law.

¶ 30.    Defendant's reliance on Arbuckle, 2004 VT 68, is similarly misplaced. That case involved a wholly different statutory scheme from the one at issue here and it offers no insight into the proper interpretation of § 1103(e). In Arbuckle, the parties stipulated that the wife would pay rehabilitative spousal maintenance to her husband through December 1999, which she did. Three years later, the husband moved to modify the spousal maintenance award, arguing that there had been a change in circumstances that warranted additional payments to him. The trial court dismissed the husband's request for lack of subject matter jurisdiction.

¶ 31.    We affirmed its decision on appeal. Id. ¶ 1. We rejected the husband's argument that the court could modify the spousal maintenance award because the Vermont Constitution gives trial courts continuing jurisdiction over their orders. See id. ¶ 5 (explaining that "[t]he jurisdiction of the family court to review its own orders is generally limited by res judicata principles"). We also rejected the husband's assertion that, under the plain language of the statute

10

governing maintenance awards, the court could modify an award whenever the need arose. See id. ¶ 6. We held that "the support requirements may be modified so long as the duty to support exists, but not thereafter," a "holding . . . in accord with the overwhelming majority of jurisdictions that have considered the issue." Id. ¶¶ 9, 10 (quotation omitted). Arbuckle does not stand for the general proposition that "[a]ny request to extend a final order after it has expired is outside the trial court's jurisdiction," as defendant asserts. It has no bearing on the court's authority to extend RFA orders under 15 V.S.A. § 1103(e), and we find it inapplicable here.

¶ 32. Because we consider plaintiff's filing timely under 15 V.S.A. § 1103(e), we do not address defendant's argument that the court erred in finding excusable neglect.

## II. Merits of Extension Order

¶ 33. On the merits, defendant challenges the adequacy of the trial court's findings and the sufficiency of the evidence in support of the extension. He emphasizes that in the first RFA order, as well as in connection with the extension motion, the trial court made no findings that defendant had abused plaintiff, and that there is a danger of further abuse. And he contends that his conduct at the school parking lot and softball field are not by themselves enough to support extending the RFA order.

¶ 34. We conclude that the trial court's decision to extend the RFA order was not supported by sufficient evidence that an extension is necessary to protect plaintiff from abuse. We remand to allow the trial court to take additional evidence given the specific circumstances of the court's evidentiary hearing.

¶ 35. A trial court's broad discretion to extend an RFA order under § 1103(e) is not unlimited. See, e.g., In re Laberge Shooting Range, 2018 VT 84, ¶ 13, 208 Vt. 441, 198 A.3d 541 ("An abuse of discretion will be found only when the trial court has entirely withheld its discretion or where the exercise of its discretion was for clearly untenable reasons or to an extent that is

11

clearly untenable." (quotation omitted)). A trial court must have <u>some</u> basis for concluding that extending an RFA order is "necessary to protect the plaintiff . . . from abuse." 15 V.S.A. § 1103(e); see also <u>Dyer v. Dyer</u>, 2010 ME 105, ¶ 11, 5 A.3d 1049 (construing a similar statute and explaining, "because a protection order can impose significant restrictions on a defendant's freedom of movement and other rights . . . , the extension must be supported by a court's determination that 'such additional time is necessary to protect the plaintiff . . . from abuse.' " (citations and alteration omitted)). In <u>Dyer</u>, the court explained that "[w]here the underlying abuse consists of 'attempting to cause or causing bodily injury or offensive physical contact,' " the court must base a decision to extend the order "on proof of continuing harm or the threat of continuing harm arising out of or related to the abuse that necessitated the protection order in the first instance." <u>Id</u>. (alteration omitted).

¶ 36. A plaintiff need not prove additional acts of abuse or violations during the term of an RFA order to secure an extension. The Legislature has expressly rejected such a requirement. See 15 V.S.A. § 1103(e) ("It is not necessary for the court to find that abuse has occurred during the pendency of the order to extend the terms of the order."). And it is not hard to imagine cases in which the facts underlying the initial order are themselves sufficient to support an extension, or even multiple extensions, of an RFA order without significant intervening events. See, e.g., <u>Dyer</u>, 2010 ME 105, ¶ 12 (extending abuse protection order based on " 'extraordinarily brutal and unprovoked' " nature of attack that led to original abuse protection order).

¶ 37. But in this case, the court had no basis for considering the acts of abuse underlying the initial RFA order. Because the parties waived findings at the time of the initial stipulated RFA order, the trial court could not rely on any findings relating to the conduct that led to the initial RFA order in assessing the need for an extension of that order to protect plaintiff from abuse. Moreover, the court did not hear any evidence in the extension hearing from which it could make

findings of its own. The plaintiff, who bore the burden of proof, did not present any evidence of the abuse that supported the initial temporary order. And the court itself stated that testimony regarding the underlying allegations from back when the initial order was applied would not be relevant or persuasive evidence in connection with plaintiff's request for an extension.[3]

¶ 38. Accordingly, any extension of the RFA order had to be grounded in the evidence presented to the court in the hearing on plaintiff's motion to extend the order. The evidence before the court in that hearing was that a year prior, while a temporary and subsequently a final RFA order was in place, defendant on one occasion drove fast over a speed bump right in front of plaintiff, and on another walked into a park where plaintiff was playing softball, glaring at her when he saw her. In the context of evidence or findings relating to the abuse underlying the initial order, this evidence might well be sufficient to support the court's conclusion that an extension of the order was necessary to protect plaintiff from abuse. But in the absence of any such evidence or findings, the court lacked a sufficient basis for concluding that extending the RFA order was necessary to protect plaintiff from abuse.

¶ 39. Although plaintiff bore the burden of proving the need for an extension and did not present sufficient evidence to meet that burden, we reverse and remand for a new evidentiary hearing rather than reversing outright. Based on the affidavit accompanying plaintiff's initial RFA complaint, it appears that plaintiff could potentially present sufficient evidence relating to the initial acts of abuse to support an extension of the order arising from those acts and defendant's conduct during the term of the initial temporary and final RFA orders. Because plaintiff's

---

[3] We disagree with the trial court's conclusion on this point. Where a plaintiff stipulates to an initial order without findings and later seeks an extension, the plaintiff may present evidence regarding the events leading to the initial order, as well as evidence concerning events since the court issued the prior order, in establishing the need for an extension. See, e.g., Dyer, 2010 ME 105, ¶¶ 3-4, 12-13 (recognizing trial court's findings about abuse leading to initial abuse protection order after evidentiary hearing on second extension request where initial order and first extended order were issued by stipulation and without findings).

testimony before the trial court consisted primarily of responding to questions from the bench, and because the trial court took the position that testimony about the underlying abuse was not relevant to the motion to extend the initial order, we are not confident that plaintiff had a sufficient opportunity to present the necessary evidence to meet her burden. For these reasons, we reverse and remand so the trial court can take evidence concerning defendant's alleged history of violence and any other matters pertinent to the request to extend the RFA.

Reversed and remanded.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice