Angelo **MELA** et al., Plaintiffs,

v.

Howard H. **CALLAWAY**, Secretary of the Army, et al., Defendants.

No. 74 Civ. 2153.

United States District Court,
S. D. New York.

June 5, 1974.

Kunstler, Kunstler Hyman & Goldberg, New York City, for plaintiffs; Steven J. Hyman, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants Wilson and Baker; Robert S. Hammer, New York City, of counsel.

Paul J. Curran, U. S. Atty., S.D.N.Y., New York City, for defendant Callaway; A. W. Fargo, III, New York City, of counsel.

ROBERT J. WARD, District Judge.

Plaintiffs, all of whom have completed or are about to complete their fifth year of service in the New York Army National Guard ("the National Guard"), a component of the Ready Reserve forces of the United States, move for an order pursuant to Rule 65, Fed.R.Civ.P., granting a preliminary injunction against defendants Howard H. Callaway, Secretary of the Army, Malcolm Wilson, Governor of the State of New York, and John C. Baker, Commanding General of the National Guard. They seek a transfer to the Standby Reserve on the grounds that their continued participation in the National Guard and the Ready Reserve is contrary to 10 U.S.C. § 269(e)(2) [1] and Army Regulation 135–91 ¶ 17b.[2] Defendants Wilson and Baker cross-move for an order pursuant to Rules 12(b)(1) and (6), (h)(3) and 56 (b), Fed.R.Civ.P., dismissing this ac-

---

1. "Except in time of war or of national emergency declared by Congress, a Reserve who is not on active duty, or who is on active duty for training, shall, upon his request, be transferred to the Standby Reserve for the rest of his term of service, if—

* * * * *

(2) he served on active duty (other than for training) in the armed forces for an aggregate of less than five years, but satisfactorily participated, as determined by the Secretary concerned, in an accredited training program in the Ready Reserve for a period which, when added to his period of active duty (other than for training), totals at least five years * * *."

2. " * * * Except for those who are discharged due to expiration of term of military service or other authorized reasons, upon completion of active duty, members will be transferred as follows:

* * * * *

b. Those who have completed a total of five but less than 6 years' Ready Reserve and active Federal service will be transferred to the Standby Reserve."

tion or granting summary judgment as to them.

On the occasion of the postal strike in March, 1970, the President of the United States declared a state of national emergency and, pursuant to 10 U.S.C. § 673, authorized and directed the Secretary of Defense to call certain reserves of the armed forces to active duty for service in the emergency. Executive Order 11519, 35 Fed. Register 5003. The call-up, denominated Operation Graphic Hand, included the units of the National Guard to which plaintiffs belong.

During Operation Graphic Hand plaintiffs did not serve with their units, as they were already performing their required active duty for training at various Army posts in the United States.

United States Army reservists who actually participated in Operation Graphic Hand or who, at that time, were on active duty for training, who otherwise qualified, have been granted transfers to the Standby Reserve upon their request. National Guardsmen who were physically present with their units have been granted this same right to transfer to the Standby Reserve by Executive Order No. 39 dated June 10, 1970,[3] issued by the Governor of the State of New York.

The Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343 and 1361 inasmuch as the plaintiffs claim a denial of their civil rights, including the right to equal protection of the laws, by defendants Wilson and

Baker acting under color of state law and because the relief plaintiffs seek from defendant Callaway is in the nature of mandamus.

The parties are virtually agreed on the facts and on the legal issues which are presented to the Court on these motions. The first question involves the interpretation and application to plaintiffs of 10 U.S.C. § 269(e)(2) and (g)[4] and Army Regulation 135–91 ¶ 17b. The second question, which arises if the Court holds that the Governor's consent pursuant to 10 U.S.C. § 269(g) is required in order to transfer plaintiffs to the Standby Reserve, is whether the Governor has in fact given his consent to the transfer to the Standby Reserve of those in plaintiffs' position.

Plaintiffs argue that the consent of the Governor required by § 269(g) is limited to § 269(f) and is wholly inapplicable to § 269(e). In support of this position, plaintiffs rely primarily on their interpretation of the legislative history. However, the Court does not find plaintiffs' interpretation persuasive or dispositive of the question at issue, since the legislative history does not indicate what the intent of Congress was in enacting subsection (g).

■ The Court is of the view that both a proper construction of § 269 and reasons of public policy require that plaintiffs' argument be rejected. Had Congress intended subsection (g) to apply only to subsection (f), general rules of legislative drafting would have led

---

3. "I, Nelson A. Rockefeller, by virtue of authority vested in me as Governor by the Constitution and the laws of the State of New York including Section 3 of the Military Law and by the laws of the United States including Title 10 United States Code, Section 269(g), do hereby consent to the transfer to the Standby Reserve of those members of the New York Army National Guard and New York Air National Guard, otherwise qualified, who apply for such transfer, and who complete five years of satisfactory service from the date of their enlistment and who performed full time duty in the active military service of the United States pursuant to Proclamation 3972 (35 Federal Register 5001) dated March 23, 1970, and Executive

Order 11519 (35 Federal Register 5003) dated March 23, 1970, issued by the President of the United States, and do hereby authorize and direct the Chief of Staff to the Governor to accept applications for such transfers and institute appropriate processes to effect transfer of qualified applicants as soon as possible."

4. "A member of the Army National Guard of the United States or the Air National Guard of the United States may be transferred to the Standby Reserve only with the consent of the governor or other appropriate authority of the State or Territory, Puerto Rico, the Canal Zone, or the District of Columbia, whichever is concerned."

it to include subsection (g) as a part of subsection (f) rather than making it a separate subsection which on its face is applicable to both subsections (e) and (f).

Furthermore, since subsection (f) relates to the promulgation of regulations regarding transfer, subsection (g), if it were intended to relate only to subsection (f), would refer to the governor's approval of such regulations rather than to his consent to a particular transfer. The language in subsection (g) referring to the governor's consent to each transfer of a member of the National Guard to the Standby Reserve appears to have been chosen to cover subsection (e) as well as subsection (f) of § 269.

 Sound public policy reasons also require that § 269 be construed to require the governor's consent under subsection (g) before the Army can transfer a member of the National Guard

to the Standby Reserve under subsection (e). The National Guard, while something of a hybrid under both state and federal control, is basically a state organization. It serves the state in time of civil emergencies within the state as well as being available for federal service during national emergencies. The protection of these state interests requires that members of the National Guard not be transferred by the Army to the Standby Reserve without the Governor's consent. Subsection 269(g) was apparently the means chosen by Congress to protect these state interests. Accordingly, the Court concludes that the consent of the Governor is required before defendant Callaway can transfer plaintiffs to the Standby Reserve.

Plaintiffs also argue that the former Governor of the State of New York, Nelson A. Rockefeller, had in fact given such consent on June 10, 1970, in his Proclamation [5] and Executive Order No.

5. WHEREAS, the Governor is Commander in Chief of the Militia of the State pursuant to the Constitution of the State as restated in Section three of the Military Law; and

WHEREAS, the President of the United States by Proclamation 3972 (35 Federal Register 5001) dated March 23, 1970, declared a state of national emergency in connection with a work stoppage by certain employees in the Postal Service and by Executive Order 11519 (35 Federal Register 5003) dated March 23, 1970, authorized and directed the Secretary of Defense to order and call into the active military service of the United States such of the reserve components of the armed forces as were necessary to assist the Postmaster General to restore and maintain postal service, and to execute the Postal laws of the United States including members and units of the New York Army and Air National Guard; and

WHEREAS, members of the New York Army National Guard and New York Air National Guard and members of other reserve components of the Armed Forces of the United States were called and ordered into the active military service of the United States pursuant to the order of the President and in accordance with the provisions of Title 10 United States Code, Sections 673, 3500 and 8500 and, as a result, certain of these members did serve in the active military service of the United States as directed; and

WHEREAS, certain members of reserve components, other than the National Guard are eligible, upon individual application, by virtue

of their service on active duty during the work stoppage, for transfer pursuant to Title 10, United States Code, Section 269(e)(2) to the Standby Reserve from the Ready Reserve after completing five (5) years of satisfactory service from the date of their enlistment; and

WHEREAS, certain members of the New York Army National Guard and New York Air National Guard are eligible, upon individual application, by virtue of their service during the work stoppage for transfer pursuant to Title 10 United States Code, Section 269(e)(2) to the Standby Reserve from the Ready Reserve after completing five (5) years of satisfactory service from the date of their enlistment, with the consent of the Governor. NOW, THEREFORE, I, Nelson A. Rockefeller, by virtue of the authority vested in me by the Constitution and laws of the State of New York, including Section three of the Military Law, and Title 10, United States Code, Section 269(g), have this day by Executive Order consented to the transfer to the Standby Reserve of those members of the New York Army and Air National Guard, otherwise qualified, who have performed active duty during the work stoppage, complete five (5) years of satisfactory service since enlistment and make application for transfer, and have ordered the Chief of Staff to the Governor to accept applications for such transfers and institute appropriate processes to effect transfer of qualified applicants as soon as possible."

39. Defendants do not suggest that the consent given in 1970 was subsequently withdrawn but instead argue that it does not apply to those in plaintiffs' position, *i. e.,* those already on active duty for training at the time their units were called up for active duty during the postal strike.

The Court agrees with plaintiffs' contention that the Proclamation, which recites that certain members of reserve components other than the National Guard are eligible "by virtue of their service on active duty during the work stoppage, for transfer" to the Standby Reserve and that members of the National Guard are also eligible for transfer to the Standby Reserve "by virtue of their service during the work stoppage" with the consent of the Governor, and the Executive Order give the requisite consent for the transfer to the Standby Reserve of those members of the National Guard who were serving on active duty for training when their units were called up for active duty.

The Department of the Army, Office of the Judge Advocate General, has determined that Army Regulation AR135–300 ¶ 2–38; ¶ 2–58(2) f(5); and chapter 3 require that "[r]eservists who were on active duty for training at the time of the postal strike and whose units were ordered to active duty by the Department of the Army are to be considered as having served on active duty so as to qualify for transfer under the provisions of 10 U.S.C. § 269(e)(2)." Significantly, chapter 3 of AR135–300, on which the Department of the Army relied in part in making this determination, applies only to the Army National Guard.

Although the Department of the Army determination was made subsequent to the Governor's Proclamation and Executive Order, AR135–300 was effective October 1, 1969. This regulation, which appears to deem members of all reserve components on active duty for training to be on active duty to the extent that their units are on active duty, has thus been so interpreted by an official of the Department of the Army, the agency promulgating the regulation. The Governor either knew or should have known of this provision.

Furthermore, it is clear from the Proclamation that the Governor's intent in issuing Executive Order No. 39 was to put members of the National Guard on a parity with members of other reserve components. If, in fact, the Governor did not intend that his consent extend to those in plaintiffs' position, after other reservists similarly situated were given the benefits provided in 10 U.S.C. § 269 (e)(2), he could have modified the consent given in Executive Order No. 39. This he did not do.

Instead, the present Governor, through his agent, Brigadier General Francis J. Higgins, now argues that when his predecessor issued Executive Order No. 39 he did not intend that it would apply to those in plaintiffs' position. Such *post hoc* statements made in response to a lawsuit are not persuasive.

Turning to the propriety of issuing a preliminary injunction, the Court finds that an injunction should issue prohibiting defendants from requiring plaintiffs' further attendance at National Guard meetings or drills or at their two-week Annual Field Training. "The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Gulf & Western Industries, Inc. v. The Great Atlantic & Pacific Tea Co., 476 F.2d 687, 692–693 (2d Cir. Mar. 12, 1973); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969)." Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247 (2d Cir. 1973).

In the Court's view, there are at least "sufficiently serious questions going to the merits to make them a fair ground for litigation" since absent an

**30**

additional showing by defendants, plaintiffs will prevail. Furthermore, the balance of hardships is tipped decidedly in favor of plaintiffs. Unless an injunction is granted, plaintiffs who are in or about to enter their sixth year of service in the National Guard will be required to attend drills and meetings and an annual two-week training session. Their attendance at these drills and training sessions will cause a disruption to their lives which could not be remedied should plaintiffs prevail. Defendants have not demonstrated that they will suffer any overriding injury. Nor will the issuance of a preliminary injunction interfere with the Governor's exercise of discretion as commander-in-chief of the National Guard, since the Governor exercised his discretion when he granted his consent in his Proclamation and Executive Order No. 39.

Accordingly, plaintiffs' motion for a preliminary injunction is granted and defendants Wilson's and Baker's motion to dismiss the complaint or award them summary judgment is denied.

Settle order on one day's notice.